IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KATHY S. TALLEY, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 07-6133-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Kathy Talley ("Talley") challenges the Commissioner's decision finding her not

disabled and denying her application for Disability Insurance Benefits ("DIB"). I have jurisdiction

under 42 U.S.C. §§ 405(g) and 1313(c). For the following reasons, the Commissioner's decision is

**AFFIRMED.**

I review the Commissioner's decision to ensure the Commissioner applied proper legal

standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. §

405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

///

## THE ALJ'S FINDINGS

The Administrative Law Judge ("ALJ") made his decision based upon a five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987); 20 C.F.R. § 404.920.

The ALJ found Ms. Talley's anxiety disorder, dysthymia, and headaches "severe" at step two in the sequential proceedings. Tr. 18. The ALJ found that these impairments did not meet or equal a disorder "listed" in the Commissioner's regulations, and assessed Ms. Talley's residual functional capacity ("RFC"):

> [T]he claimant has a residual functional capacity to perform medium work exertionally, if not greater. Non-exertionally she is precluded from tasks with complex instructions, or dealing with the general public.

Tr. 19.[1] The ALJ found that this RFC allowed Ms. Talley to perform work existing in the national economy and therefore found Ms. Talley not disabled. Tr. 24-25.

## ANALYSIS

Ms. Talley challenges the ALJ's analysis of her testimony and the ALJ's assesment of the opinions of an examining psychologist and a mental health therapist. Ms. Talley consequently challenges the ALJ's conclusion that she retains the RFC to perform work existing in the national economy.

## I.    Ms. Talley's Testimony

Ms. Talley submits that the ALJ erroneously rejected her testimony. Pl.'s Opening Br. 17-19.

The ALJ found Ms. Talley's statements "concerning the intensity, persistence, and limiting effects

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer November 5, 2007 (Docket #11).

of [her] symptoms . . . not entirely credible." Tr. 20.  The ALJ's support for this finding discusses Ms. Talley's daily activities, mental health treatment, and failure to attend treatment.  Tr. 20-23. Taken together, these are acceptable reasons for questioning a claimant's credibility.  *Smolen v. Chater*, 80 F.3d at 1273, 1284 (9th Cir. 1996).

Ms. Talley specifically contends that the ALJ's credibility finding erroneously relied upon her part-time work activity.  Pl.'s Opening Br. 18.  The ALJ's credibility discussion noted the tasks Ms. Talley performed in her capacity as a paid caregiver.  Tr. 20, 21.  Such activities of daily living may show that a claimant is capable of more activity than she alleges.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The amount of money Ms. Talley earned, and whether that money amounted to substantial gainful activity, is not relevant to the ALJ's credibility finding.  For this reason, the ALJ's citation to Ms. Talley's work activity in his credibility analysis is sustained.

Ms. Talley also refutes the ALJ's finding that she failed to follow through with treatment,[2] submitting that she failed to attend medical appointments because "she often made plans and had to cancel them."  Pl.'s Opening Br. 18 (citing tr. 404).  Poverty is an acceptable reason for failing to seek treatment.  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).  Other reasons a claimant may refuse treatment include religious beliefs or risk of extraordinary side effects.  20 C.F.R. §§ 404.1530, 416.930.  Conflicting daily activity is not an acceptable reason for failure to seek treatment.  The ALJ's reference to Ms. Talley's "disinterest" in treatment (tr. 21) is therefore affirmed.

In summary, the ALJ cited appropriate reasons for finding Ms. Talley not credible.  This

---

[2]Here Ms. Talley adds that she participated in telephonic counseling sessions because she was unwilling to leave her house.  Pl's Opening Br. 18-19.  However, this submission does not address whether Ms. Talley did or did not attend or comply with treatment.

finding is affirmed.

## II.    Medical Source Statements

Ms. Talley challenges the ALJ's assessment of the opinions of examining psychologist Barbara Perry, Ph.D.

The ALJ must show "clear and convincing" reasons for rejecting an uncontradicted examining psychologist's opinion and "specific and legitimate" reasons for rejecting an examining psychologist's contradicted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Here the ALJ may reject an opinion that is brief, conclusory, or unsupported by clinical findings.  *Id.*

Ms. Talley asserts that Dr. Perry is the only examining mental health practitioner who is an acceptable medical source under the Commissioner's regulations.  Pl.'s Opening Br. 17.  Such a distinction is irrelevant because general practitioners who treated Ms. Talley may assess mental health conditions, *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), and the Commissioner must additionally consider all medical opinions, regardless of the source.   20 C.F.R.  §§ 404.1520(a)(3), 404.1527(a)(d).

Dr. Perry evaluated Ms. Talley on June 2, 2006.  Tr. 320-29.  Dr. Perry assessed post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, major depressive disorder "probably recurrent, moderate to severe," and additionally assessed rule-out diagnoses of social phobia and obsessive-compulsive disorder.  Tr. 328.  Dr. Perry made no specific work-related restrictions.

Ms. Talley alleges that the ALJ's characterization of Dr. Perry's findings as "rather normal" misconstrued Dr. Perry's findings.  Pl.'s Opening Br. 16.  The ALJ discussed Dr. Perry's mental status findings:

> [Ms. Talley] was oriented to person, place, and time. A test of her
> concentration showed that she was able to spell "world" forward and
> backward. She was able to count backward with no error; she was
> able to repeat a string of 6 digits on 2 of 2 repetitions. She was able
> to calculate 5 of 7 simple math problems.

Tr. 23. This citation refers to Dr. Perry's mental status examination test results. The record reflects

the ALJ's summary. Tr. 322.

Dr. Perry also observed that Ms. Talley appeared "alert, cooperative, and attentive but also

reticent and nervous" during evaluation. Tr. 322. Dr. Perry wrote:

> [Ms. Talley's] mood was anxious (she laughed nervously), and her
> affect appeared dramatized but nervous. She appeared somewhat
> hyperactive, especially with her hands and keeping her body in her
> chair. She sometimes made irregular, jerky movements. Her speech
> was pressured but nonspontaneous, and she was lacking in fluency
> and had difficulty expressing her thoughts. There was no evidence of
> psychotic or delusional thinking during the evaluation.

*Id.* Though Dr. Perry's conclusion assessed PTSD, anxiety and depressive disorders, Dr. Perry did

not immediately suggest that the observations and testing above revealed significant abnormalities

or pathology. *Id.* Therefore this court will not disturb the ALJ's characterization of these test results

as "rather normal."

The ALJ also noted that Ms. Talley "reported [to Dr. Perry] a host of activities she was able to

perform," including work as a caregiver, performing household chores, visiting friends, shopping,

and handling finances. Tr. 23. These findings are based upon the record. Tr. 328. The ALJ may

reject a medical opinion unsupported by clinical findings. *Bayliss*, 427 F.3d at 1216. The ALJ's

inference that Dr. Perry's conclusions, including her agorophobia assessment, were contradicted by

this information is therefore affirmed.

The ALJ concluded, "Dr. Perry made no attempt to explain the apparent contradiction of a

PAGE 5 - OPINION AND ORDER

claimant's two-decade work history with the State of Washington against a backdrop of "anxiety since childhood" and the ability to carry out caregiver duties notwithstanding the level of function [Dr. Perry] assessed." Tr. 23. This finding infers that Ms. Talley worked despite her impairments prior to the date she now claims disability. Ms. Talley correctly notes that this finding is irrelevant because it does not consider Ms. Talley's ability to work during the period she claimed disability. Pl.'s Opening Br. 19. However, the ALJ's reference does not undermine his assessment of Dr. Perry's opinion.

In summary, the ALJ's analysis of Dr. Perry's opinion is based upon the record. The ALJ's RFC restricted Ms. Talley from performing tasks requiring complex instruction or interacting with the public (tr. 19). Though Dr. Perry assigned no work-related limitations, the ALJ's RFC accounts for Dr. Perry's suggestion that Ms. Talley is nervous and has difficulty with social interactions. Ms. Talley fails to establish that the ALJ erroneously omitted any specific aspect of Dr. Perry's opinion. The ALJ's analysis of Dr. Perry's opinion is based upon the record and the correct legal standards and is therefore affirmed.

## III.  Lay Witness Testimony

Ms. Talley also challenges the ALJ's evaluation of treatment notes produced by mental health counselor Pam Jones, M.Ed.

### A.    Mental Health Therapist Pam Jones, M.Ed.

Ms. Jones treated Ms. Talley at Deschutes County Mental Health ("DCMH") between November 2005 and July 2006. Tr. 261-303, 331-345, 369. Ms. Jones is not an acceptable medical source. 20 C.F.R. § 404.1513(d)(1), Social Security Ruling ("SSR") 06-3p at *3 (available at 2006

WL 2329939).  Ms. Jones is therefore evaluated as an "other" source, or lay witness.  *Id.*  The ALJ

must consider all evidence in the record, including opinions rendered by such "other" sources.  *Id.*

The ALJ repeatedly referenced Ms. Talley's DCMH treatment records.  Tr. 21-22.  However,

the ALJ did not specifically cite Ms. Jones by name and does not appear to directly cite Ms. Jones'

treatment records.  The question before this court is whether the ALJ's failure to discuss Ms. Jones'

records is harmless.

Between November 2005 and July 2006 Ms. Jones conducted individual therapy sessions

with Ms. Talley.  During this period Ms. Jones noted Ms. Talley's reports of her feelings and

symptoms and entered diagnoses in Ms. Talley's treatment record.    On February 22, 2006, Ms. Jones

submitted a letter to the record stating that Ms. Talley "presented with exaggerated startle response,

intrusive thoughts, nightmares and flashbacks about her father's death and the abuse of her stepfather.

She often forgets things and is often confused.  The diagnosis . . . is Post-Traumatic Stress Disorder."

Tr. 302.  Ms. Jones subsequently reititerated Ms. Talley's reports of difficulty sleeping, and stated

"when [Ms. Talley] is in a stressful situation she feels as if she is underwater which seems to be a

form of disassociation."  *Id.*

As an "other" source, Ms. Jones may not establish a diagnosis or "existence of a medically

determinable impairment."  SSR 06-3p at *2.  The ALJ was therefore not required to consider Ms.

Jones' diagnostic assessment.

Regarding Ms. Talley's workplace functioning, Ms. Jones concluded,

> These problems will impose limits on the Client in seeking or
> maintaining employment.  She became a caregiver for two individuals
> but had to give up one job because it was too stresful for her.  She has
> difficulty functioning with her remaining patient but has to hold on

to that job to support herself and her son.  The Client would find it difficult to deal with the public or interact with co-workers.  She may misinterpret any directions or criticism of supervisors or co-workers in an extremely negative way.  She would not be able to perform complex tasks due to her inability to understand or follow directions. The Client would find it difficult to be present full time at any job. She would not be able to be present at work because of her migraines, her anxiety, her inability to concentrate and her need to isolate herself several times a day.

Tr. 303.

Ms. Jones' opinion does not describe her own observations of Ms. Talley's workplace functioning.  Such direct observations could establish disability.  *Stout v. Comm'r of Soc. Security*, 454 F.3d 1050, 1055-56 (9th Cir. 2006), *Schneider v. Comm'r*,  223 F.3d 968, 976 (9th Cir. 2000). Ms. Jones presently noted that Ms. Talley maintains one job, though with difficulty, and speculated regarding Ms. Talley's workplace functioning. Tr. 366.  These statements do not reflect observation of Ms. Talley in the workplace.  As such, even if credited, they would not establish disability.  *See id.*

Ms. Tally fails to point to testimony submitted by Ms. Jones that demonstrates inability to function in the workplace.  This court cannot conclude that a "reasonable ALJ, when fully crediting the testimony, would have reached a different disability determination."  *Stout*, 454 F.3d at 1056. The ALJ's failure to discuss Ms. Jones' testimony is therefore inconsequential.

In summary, Ms. Talley fails to show that the ALJ made reversible errors in his assessment of her testimony and the opinions of Dr. Perry and Ms. Jones.  The ALJ's findings are therefore affirmed.

///

PAGE 8 - OPINION AND ORDER

**<u>CONCLUSION</u>**

The Commissioner's decision that Ms. Talley did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED and the case is dismissed.

IT IS SO ORDERED.

Dated this __18__ day of July, 2008.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge